*KSC/05.07.25*
AK/MKH: USAO#2022R00743

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FILED _____ ENTERED
LOGGED _____ RECEIVED

MAY 0 8 2025

BY _____
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | |
| **WILSON ARTURO CONSTANZA-** | * | |
| **GALDOMEZ,** | * | **CRIMINAL NO. 1:22-CR-409-SAG** |
| a.k.a. Humilde, | * | |
| a.k.a. Marco Saravia, | * | |
| | * | |
| **EDIS OMAR VALENZUELA-** | * | **(Conspiracy to Participate in a** |
| RODRIGUEZ, | * | Racketeering Enterprise, |
| a.k.a. Little Felon, | * | **18 U.S.C. § 1962(d); 18 U.S.C. §** |
| | * | **1959(a)(1); Murder in Aid of** |
| **JONATHAN PESQUERA-PUERTO,** | * | **Racketeering Activity - 2 counts);** |
| a.k.a. Truney, | * | **Forfeiture, 18 U.S.C. § 1963)** |
| | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## SUPERSEDING INDICTMENT

## COUNT ONE

### (Conspiracy to Participate in a Racketeering Enterprise)

The Grand Jury for the District of Maryland charges that:

### Introduction

1.      *La Mara Salvatrucha*, also known as the MS-13 gang ("MS-13"), was a gang composed primarily of immigrants or descendants of immigrants from El Salvador, with members operating in the State of Maryland, including in Baltimore City, Baltimore County, and throughout the United States.

2.      The name "Mara Salvatrucha" was a combination of several slang terms. The word "Mara" was the term used in El Salvador for "gang." The word "Salvatrucha" was a combination

of the words "Salva," which was an abbreviation for "Salvadoran," and "trucha," which was a slang term for "fear us," "look out," or "heads up."

3. In the United States, MS-13 has been functioning since at least the 1980s. MS-13 originated in Los Angeles, California, where MS-13 members banded together for protection against the larger Mexican groups. MS-13 evolved into a gang that engaged in turf wars for the control of drug distribution locations. MS-13 quickly spread to states across the country, including Maryland.

4. MS-13 was a national and international criminal organization and was one of the largest street gangs in the United States. Gang members actively recruited members, including juveniles, from communities with a large number of Salvadoran immigrants.

5. Members of MS-13 from time to time signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS-13," or similar tattoos, often written in gothic lettering. Members also signified their membership through tattoos of devil horns in various places on their bodies. Members sometimes avoided conspicuous MS-13 tattoos, instead wearing discreet ones such as "503," spider webs, three dots in a triangle formation signifying the phrase "*mi vida loca*," or clown faces with phrases such as "laugh now, cry later." Some MS-13 members have chosen not to have tattoos at all, or to have them placed on areas such as the hairline where they can be easily covered to conceal their gang affiliation from law enforcement.

6. The gang colors of MS-13 were blue, black, and white, and members often wore clothing, particularly sports jerseys, with the number "13," or with numbers that, when added together, totaled 13, such as "76." MS-13 members also wore blue and white clothing to represent their membership, including blue and white shoes such as the Nike "Cortez" sneakers. As with

tattoos, some MS-13 members selected more discreet ways of dressing to signify their membership and at the same time avoid detection by law enforcement.

7. MS-13 members referred to one another by their gang names, or monikers, and often did not know fellow gang members except by their gang names.

8. Members of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons. MS-13 members required that all individuals show respect and deference to the gang and its membership. To protect the gang and to enhance its reputation, MS-13 members were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence. MS-13's creed was based on one of its mottos, "*Mata, viola, controla*," which translated in sum and substance to, "Kill, rape, control," and, "*ver oir y callar*," which means, "see nothing, hear nothing and say nothing."

9. Members and associates of MS-13 frequently engaged in criminal activity, including, but not limited to, murder, assault, drug trafficking, robbery, and extortion, as well as attempts and conspiracies to commit such offenses. MS-13 members were required to commit acts of violence to maintain membership and discipline within the gang, as well as against rival gang members. Participation in criminal activity by a member, particularly in violent acts directed at rival gangs or as directed by gang leadership, increased the respect accorded to that member, resulted in that member maintaining or increasing his position in the gang, and opened the door to a promotion to a leadership position. One of the principal rules of MS-13 was that its members must attack and kill rivals whenever possible. Rivals were often referred to as "*chavalas*." MS-13, in the area of Baltimore City and Baltimore County, Maryland maintained rivalries with the

18th Street Gang, the Cruddy Boys, the Highlandtown Boys, the Surenos Gang, and the Bloods Gang, among others.

10.     Cooperation with law enforcement is also strictly prohibited under MS-13's rules. It is well understood within the gang that anyone who assists the authorities will be punished with death, and that the gang honors those who have killed police informants.

11.     Prospective members who sought to join MS-13 were required to prove themselves over time. Individuals who associated with and were friends of the gang were called "*paisas.*" Individuals who did favors and other acts for the gang were called "*paros.*" Persons being observed by the gang for potential membership were known as "*observations*" or "*observaciones.*" Individuals who had advanced to the final level before being "jumped in" were called "*chequeos.*" *Chequeos* underwent a probationary period during which they were required to commit additional, more serious crimes on behalf of MS-13 to achieve trust and prove their loyalty to the gang. To join MS-13 and become full members or "homeboys," prospective members were required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang. During that initiation, other members of MS-13 would beat the new member, usually until a gang member finished counting aloud to the number thirteen, representing the "13" in MS-13.

12.     MS-13 was an international criminal organization and was organized in Maryland and elsewhere into "cliques," that is, smaller groups operating in a specific city or region. Cliques operated under the umbrella rules of MS-13. MS-13 cliques often worked together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement. In Maryland and the surrounding area these cliques included, among others, Huntington Criminales Locos Salvatrucha ("HCLS" or "Huntington"), Virginia Locos Salvatrucha ("VLS"), Carlington Locos Salvatrucha ("CALS"), Fulton Locos Salvatrucha ("FLS" or "Fulton"),

Hempstead Locos Salvatrucha ("HLS" or "Hempstead"), Uniones Locotes Salvatrucha ("ULS"), Molinos Locotes Salvatrucha ("MLS"), Hollywood Locos Salvatrucha ("HWLS"), Normandie Locos Salvatrucha ("NLS" or "Normandie"), Sailors Locos Salvatrucha Westside ("SLSW" or "Sailors"), Coronados Locos Salvatrucha ("CLS"), Parkview Locos Salvatrucha ("PVLS"), Guanacos Little Psychos Salvatrucha ("GLS"), and Langley Park Salvatrucha ("LPS").

13.     Defendants **WILSON ARTURO CONSTANZA-GALDOMEZ** and **JONATHAN PESQUERA-PUERTO** were members and associates of MS-13 and members of the Carlington Locos Salvatrucha clique. Defendant **EDIS OMAR VALENZUELA-RODRIGUEZ** was a member and associate of MS-13 and a member of the Huntington Criminales Locos Salvatrucha clique.

14.     Each clique was presided over by the "First Word," the leader or president of the clique. The leader was also sometimes referred to as "*Primera Palabra*" or "*Corredor*." The "Segundo Palabra" or "Second Word" was the second-in-command of the clique. General members were required to take orders from the First Word and Second Word. Clique leaders would often designate particular homeboys to take leadership positions over certain geographical areas.

15.     MS-13 cliques kept in contact and reported to the leaders for their respective cliques, who were oftentimes based in various states or in El Salvador. Cliques contacted their leaders based in other states or El Salvador using cellular telephones during clique meetings to keep them updated on gang business, for advice, and to resolve disagreements regarding operations among local cliques. Incarcerated clique leaders based in El Salvador regularly communicated and directed orders to Maryland-based cliques through phones smuggled into Salvadoran prisons.

16.     MS-13 members met on a regular basis to, among other things, discuss gang affairs and report on acts of violence committed by their members, with the goal of inciting and encouraging further violence.  Each clique held clique meetings where business specific to that clique was discussed.  Any perceived indiscretions by members or violations of MS-13 rules were talked about at clique meetings and punishments or "violations" were issued.  Violations often took the form of beatings by fellow MS-13 members, often referred to as "court."  More serious violations resulted in the issuance of a "greenlight," which was an order and/or approval to kill.

17.     MS-13 leaders from various cliques also held regional meetings to discuss issues between cliques and discuss criminal ventures among the cliques.  Clique leaders from across the United States, from other countries, and within regions of the United States would meet or communicate by telephone conference to discuss gang rules and gang business, to resolve problems or issues among cliques and gang members of different cliques, and to unite gang members from across the country.

18.     MS-13 received money and income from sources including member dues and the extortion or "taxing" of brothels and other illegitimate businesses, as well as narcotics trafficking and the commission of robberies.  Such funds were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members who were imprisoned in the United States, both inside and outside of Maryland, and in El Salvador.

19.     MS-13 members communicated about gang activities with other MS-13 members in Maryland and elsewhere using mobile telephones, telephone text messages, social media such as Facebook, e-mail accounts, and other modes of communication.  Additionally, MS-13 members used international money wire transfers to conduct and promote gang activities.

### The Racketeering Enterprise

20. MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected interstate and foreign commerce ("the Enterprise"). The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

### Purposes of the Enterprise

21. The purposes of the MS-13 Enterprise included:

a. Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, threats of violence, and violence, including assaults and murder;

b. Promoting and enhancing the enterprise and its leaders', members', and associates' activities, including, but not limited to, murder, kidnapping, extortion, drug trafficking, robbery, and other criminal activities;

c. Keeping victims, potential victims, and community members in fear of the enterprise through violence and threats of violence;

d. Providing financial support and information to gang leaders, members, and associates, including individuals incarcerated in the United States and in El Salvador;

e. Providing assistance to gang leaders, members, and associates who committed crimes on behalf of the enterprise; and

f. Hindering, obstructing, and preventing law enforcement officers from identifying participants in the enterprise's criminal activity; from apprehending the perpetrators of those crimes; and from successfully prosecuting and punishing the offenders.

**Means and Methods of the Enterprise**

22.     Among the means and methods by which the members and associates of MS-13 conducted and participated in the conduct of the affairs of the Enterprise were the following:

a.     The members and associates of MS-13 used intimidation, threats of violence, and violence, including assaults and murder, to preserve, expand, and protect MS-13's territory and activities, to promote and enhance its prestige, reputation, and position in the community, and to discipline gang members who had been disloyal or had violated gang rules;

b.     The members and associates of MS-13 attended regular gang meetings and communicated with other MS-13 members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; identifying for the purpose of assaulting or murdering rival gang members and others; efforts to increase gang income, through means such as drug trafficking and extortion; MS-13 leaders, members, and associates who had been arrested or incarcerated; disciplining MS-13 leaders, members, and associates who had violated gang rules; police interactions with MS-13 leaders, members, and associates; the identities of individuals suspected of cooperating with law enforcement, and proposed actions to be taken against them; and plans and agreements regarding the commission of future crimes, as well as ways to conceal these crimes;

c.     The members and associates of MS-13 also communicated with other MS-13 members in Maryland and elsewhere, and represented their gang allegiance, through social media such as Facebook, including by posting photographs of themselves with other gang members, showing gang hand signs, wearing colors or clothing associated with MS-13, and posing with weapons or gang-related graffiti, and by sending and/or posting messages referencing their affiliation with MS-13;

d.     The members and associates of MS-13 financed the enterprise through a variety of activities, including the extortion of money – sometimes referred to as "rent" – from gang members and from legitimate and illegitimate businesses operating on the gang's turf, as well as through the commission of robberies;

e.     The members and associates of MS-13 distributed and agreed to distribute controlled substances on behalf of the gang;

f.     The funds raised by the gang were used for gang purposes, including obtaining weapons and providing support for MS-13 gang members, including those imprisoned in the United States, inside and outside of Maryland, and in El Salvador;

g.     The members and associates of MS-13 hindered and obstructed the efforts of law enforcement to identify, apprehend, and successfully prosecute and punish gang members;

h.     The members and associates of MS-13 would investigate rival gang members or other persons targeted for violence; would obtain information about such targets, including locations frequented by them; and would use such information in their plans to attack such targets;

i.     The members and associates of MS-13 would and did agree that acts involving murder, including conspiracy and attempts to commit murder, and other acts of violence, would be committed by members and associates of MS-13 against rival gang members and persons deemed as threats to MS-13 and for the purpose of imposing discipline within the gang, and on other occasions as deemed necessary.

### The Racketeering Conspiracy

23.     Beginning on a date unknown, but by at least in or about June 2019, and continuing through at least in or about October 2021, in the District of Maryland and elsewhere,

**WILSON ARTURO CONSTANZA-GALDOMEZ,**
**a.k.a. Humilde,**
**a.k.a. Marco Saravia,**

**EDIS OMAR VALENZUELA-RODRIGUEZ,**
**a.k.a. Little Felon,**

**JONATHAN PESQUERA-PUERTO,**
**a.k.a. Truney, and**

the defendants herein, and others known and unknown to the Grand Jury, being persons employed by and associated with MS-13, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly conspire and agree to violate 18 U.S.C. § 1962(c), that is to conduct and participate, directly and indirectly, in the conduct of the affairs of the MS-13 Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1) and (5), which pattern of racketeering activity consisted of:

    (a)    Multiple acts involving:

        (1) murder, in violation of Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, 2-206, 1-201, and 1-202, and the Common Law of Maryland, punishable pursuant to Maryland Code, Criminal Law §§ 1-201, 1-202, 2-201, 2-204, 2-205, and 2-206;

    (b)    Multiple offenses involving drug trafficking, in violation of 21 U.S.C. §§ 841 and 846;

    (c)    multiple acts indictable under:

        (1) Title 18, United States Code, Section 1512 (relating to tampering with a witness, victim, or informant);

        (2) Title 18, United States Code, Section 1513 (relating to retaliating against a witness, victim, or an informant).

24. It was further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## Overt Acts

25. In furtherance of the conspiracy, and to effect the illegal object thereof, the defendants and their co-conspirators performed, participated in, and did the following acts, among others, in the District of Maryland and elsewhere:

    a.      On or about April 25, 2020, an MS-13 member informed other MS-13 members that Victim 1, a suspected member of the 18th Street gang, was living in the basement of a house on Macon Street in Baltimore, Maryland.

    b.      On or about April 25, 2020, **CONSTANZA-GALDOMEZ** and **VALENZUELA-RODRIGUEZ**, and other members and associates of MS-13 conspired to assault Victim 1 with a dangerous weapon because he was a suspected rival gang member.

    c.      On or about April 25, 2020, **CONSTANZA-GALDOMEZ** and **VALENZUELA-RODRIGUEZ**, and other members and associates of MS-13 assaulted Victim 1 in Baltimore, Maryland by striking him with machetes multiple times.

    d.      On or about April 25, 2020, after the assault of Victim 1, other members and associates of MS-13 reported the assault to MS-13 leadership.

    e.      In or about May 2020, **CONSTANZA-GALDOMEZ, VALENZUELA-RODRIGUEZ**, and other members and associates of MS-13 conspired to murder Victim 2 because he was a suspected rival gang member/associate.

f.      On or about May 14, 2020, **VALENZUELA-RODRIGUEZ** and another member and associate of MS-13 attempted to lure Victim 2 to Patterson Park for the purpose of killing him.

g.      On or about May 14, 2020, **CONSTANZA-GALDOMEZ, VALENZUELA-RODRIGUEZ,** and other members and associates of MS-13 attempted to murder Victim 2 in Baltimore, Maryland by stabbing Victim 2 with a knife.

h.      In or about May 2020, **CONSTANZA-GALDOMEZ, VALENZUELA-RODRIGUEZ**, and **PESQUERA-PUERTO**, and other members and associates of MS-13 conspired to murder Victim 3 because she was suspected of associating with rival gang members/associates.

i.      On or about May 29, 2020, **CONSTANZA-GALDOMEZ, VALENZUELA-RODRIGUEZ**, and **PESQUERA-PUERTO**, and other members and associates of MS-13 lured Victim 3 to a park in Cockeysville, Maryland for the purpose of murdering her.

j.      On or about May 29, 2020, **CONSTANZA-GALDOMEZ, VALENZUELA-RODRIGUEZ**, and **PESQUERA-PUERTO**, murdered Victim 3 in Cockeysville, Maryland by stabbing her numerous times with knives.

k.      On or about May 29, 2020, after the murder of Victim 3, members and associates of MS-13 reported the murder to MS-13 leadership in an effort to get credit for participating and to increase their status within MS-13.

l.      In or about June 2020, **CONSTANZA-GALDOMEZ** and **VALENZUELA-RODRIGUEZ**, and other members and associates of MS-13 conspired to

murder Victim 4 because she was a suspected rival gang member/associate and the gang believe she cooperated with law enforcement.

m. On or about June 5, 2020, **CONSTANZA-GALDOMEZ** and **VALENZUELA-RODRIGUEZ**, and other members and associates of MS-13 lured Victim 4 to an area near the CSX Bayview Yard in Baltimore, Maryland for the purpose of murdering her.

n. On or about June 5, 2020, **CONSTANZA-GALDOMEZ** and **VALENZUELA-RODRIGUEZ**, and other members and associates of MS-13 murdered Victim 4 in Baltimore, Maryland by stabbing her numerous times with sharp objects.

o. On or about June 5, 2020, after the murder of Victim 4, members and associates of MS-13 reported the murder to MS-13 leadership in an effort to get credit for participating and to increase their status within MS-13.

p. In or about June 2020, **CONSTANZA-GALDOMEZ**, **VALENZUELA-RODRIGUEZ**, and **PESQUERA-PUERTO,** and other members and associates of MS-13 conspired to murder Victim 5 because she was a suspected rival gang member/associate.

q. On or about June 6, 2020, in Baltimore, Maryland, members and associates of MS-13, at the direction of **CONSTANZA-GALDOMEZ** and others, forced Victim 5 to go to a different area in Baltimore, Maryland for the purpose of murdering her.

r. On or about June 6, 2020, members and associates of MS-13 assaulted and attempted to kill Victim 5 by stabbing her multiple times.

s. In or about June 2020, **CONSTANZA-GALDOMEZ**, **VALENZUELA-RODRIGUEZ**, and **PESQUERA-PUERTO,** and other members and associates of MS-13 conspired to murder Victim 6 because he had previously been "greenlit" for murder by the gang.

t. On or about June 6, 2020, **CONSTANZA-GALDOMEZ**, **PESQUERA-PUERTO**, and another member and associate of MS-13 forced Victim 6, at knifepoint, to go to Dundalk, Maryland for the purpose of murdering him.

u. On or about June 6, 2020, **CONSTANZA-GALDOMEZ**, **VALENZUELA-RODRIGUEZ**, and **PESQUERA-PUERTO,** and other members and associates of MS-13 attempted to murder Victim 6 by stabbing him multiple times with knives.

v. From in or about 2019 through in or about 2020, **CONSTANZA-GALDOMEZ**, **VALENZUELA-RODRIGUEZ**, and **PESQUERA-PUERTO,** and other members and associates of MS-13 conspired and agreed to distribute marijuana, cocaine, and fentanyl to raise funds for MS-13 to purchase drugs and weapons for the gang, and to send the proceeds of the drug sales to MS-13 members and associates in Maryland, in other states, and in El Salvador to support the gang.

**Special Sentencing Factors**

26. In or about May 2020, in the District of Maryland, **CONSTANZA-GALDOMEZ** and **VALENZUELA-RODRIGUEZ** did unlawfully conspire and agree with each other and others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim 2, in violation of Maryland Code, Criminal Law § 2-201, and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

27. On or about May 14, 2020, in the District of Maryland, **CONSTANZA-GALDOMEZ** and **VALENZUELA-RODRIGUEZ**, with others known and unknown to the Grand Jury, did feloniously, willfully, and with deliberately premeditated malice, attempt to kill and murder Victim 2, in violation of Maryland Code, Criminal Law § 2-205, and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-201.

28.     In or about May 2020, in the District of Maryland, **CONSTANZA-GALDOMEZ**, **VALENZUELA-RODRIGUEZ**, and **PESQUERA-PUERTO** did unlawfully conspire and agree with each other and others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim 3, in violation of Maryland Code, Criminal Law § 2-201, and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

29.     On or about May 29, 2020, in the District of Maryland, **CONSTANZA-GALDOMEZ**, **VALENZUELA-RODRIGUEZ**, and **PESQUERA-PUERTO**, with others known and unknown to the Grand Jury, did feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim 3, in violation of Maryland Code, Criminal Law § 2-201, and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

30.     In or about June 2020, in the District of Maryland, **CONSTANZA-GALDOMEZ** and **VALENZUELA-RODRIGUEZ**, did unlawfully conspire and agree with each other and others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim 4, in violation of Maryland Code, Criminal Law § 2-201, and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

31.     On or about June 5, 2020, in the District of Maryland, **CONSTANZA-GALDOMEZ** and **VALENZUELA-RODRIGUEZ**, with others known and unknown to the Grand Jury, did feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim 4, in violation of Maryland Code, Criminal Law § 2-201, and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 2-201.

32.     In or about June 2020, in the District of Maryland, **CONSTANZA-GALDOMEZ**, **VALENZUELA-RODRIGUEZ**, and **PESQUERA-PUERTO** did unlawfully conspire and agree with each other and others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim 5, in violation of Maryland Code, Criminal Law § 2-201, and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

33.     In or about June 2020, in the District of Maryland, **CONSTANZA-GALDOMEZ**, **VALENZUELA-RODRIGUEZ**, and **PESQUERA-PUERTO** did unlawfully conspire and agree with each other and others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder Victim 6, in violation of Maryland Code, Criminal Law § 2-201, and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

34.     On or about June 6, 2020, in the District of Maryland, **CONSTANZA-GALDOMEZ**, **VALENZUELA-RODRIGUEZ**, and **PESQUERA-PUERTO**, with others known and unknown to the Grand Jury, did feloniously, willfully, and with deliberately premeditated malice, attempt to kill and murder Victim 6, in violation of Maryland Code, Criminal Law § 2-205, and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-201.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO

### (Murder in Aid of Racketeering Activity)

The Grand Jury for the District of Maryland further charges that:

35.  MS-13, including its leaders, members, and associates, as described more particularly in paragraphs 1 through 19 and 21 through 22 of Count One, which paragraphs are realleged and incorporated by reference as though set forth fully herein, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that  engaged in, and the activities of which affected, interstate commerce. The enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

36.  MS-13, through its leaders, members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts and threats involving: murder, chargeable under Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, 2-206, 1-201, and 1-202, and the Common Law of Maryland; and offenses involving dealing in controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and acts indictable under 18 U.S.C. §§ 1512 and 1513, relating to tampering with or retaliating against a witness, victim, or informant.

37.  On or about May 29, 2020, in the District of Maryland, and elsewhere, the defendants,

**WILSON ARTURO CONSTANZA-GALDOMEZ,**
**a.k.a. Humilde,**
**a.k.a. Marco Saravia,**

**EDIS OMAR VALENZUELA-RODRIGUEZ,**
**a.k.a. Little Felon, and**

**JONATHAN PESQUERA-PUERTO,**
**a.k.a. Truney,**

and others known to the Grand Jury, while aiding and abetting each other, for the purposes of gaining entrance to, and maintaining and increasing position in, MS-13, an enterprise engaged in racketeering activity, knowingly and intentionally murdered Victim 3, in violation of, and punishable pursuant to, Maryland Code, Criminal Law §§ 2-201 and 2-204.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT THREE

### (Murder in Aid of Racketeering Activity)

The Grand Jury for the District of Maryland further charges that:

38.    MS-13, including its leaders, members, and associates, as described more particularly in paragraphs 1 through 19 and 21 through 22 of Count One, which paragraphs are realleged and incorporated by reference as though set forth fully herein, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate commerce. The enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

39.    MS-13, through its leaders, members, and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts and threats involving: murder, chargeable under Maryland Code, Criminal Law §§ 2-201, 2-204, 2-205, 2-206, 1-201, and 1-202, and the Common Law of Maryland; and offenses involving dealing in controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and acts indictable under 18 U.S.C. §§ 1512 and 1513, relating to tampering with or retaliating against a witness, victim, or informant.

40.    On or about June 5, 2020, in the District of Maryland, and elsewhere, the defendants

**WILSON ARTURO CONSTANZA-GALDOMEZ,**
**a.k.a. Humilde,**
**a.k.a. Marco Saravia, and**

**EDIS OMAR VALENZUELA-RODRIGUEZ,**
**a.k.a. Little Felon,**

and others known to the Grand Jury, while aiding and abetting each other, for the purposes of gaining entrance to, and maintaining and increasing position in, MS-13, an enterprise engaged in

racketeering activity, knowingly and intentionally murdered Victim 4, in violation of, and punishable pursuant to, Maryland Code, Criminal Law §§ 2-201 and 2-204.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## NOTICE OF SPECIAL FINDINGS

The allegations of Counts Two and Three of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

### Count Two

As to Count Two, defendants

**WILSON ARTURO CONSTANZA-GALDOMEZ,**
**a.k.a. Humilde,**
**a.k.a. Marco Saravia,**

**EDIS OMAR VALENZUELA-RODRIGUEZ,**
**a.k.a. Little Felon, and**

**JONATHAN PESQUERA-PUERTO,**
**a.k.a. Truney,**

1. Were more than 18 years of age at the time of the offenses (18 U.S.C. § 3591(a));

2. Intentionally killed the victim (18 U.S.C. § 3591(a)(2)(A));

3. Intentionally inflicted serious bodily injury that resulted in the death of the victim (18 U.S.C. § 3591(a)(2)(B));

4. Intentionally participated in acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offenses, and the victims died as a result of the acts (18 U.S.C. § 3591(a)(2)(C));

5. Intentionally and specifically engaged in acts of violence knowing that the acts created a grave risk of death to a person, other than one of the participants to the offenses, such that participation in the acts constituted a reckless disregard for human life and the victims died as a result of the acts (18 U.S.C. § 3591(a)(2)(D));

6. Committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim. (18 U.S.C. § 3592(c)(6));

7.      Committed the offense after substantial planning and premeditation to cause the death of a person (18 U.S.C. § 3592(c)(9)); and

8.      Victim 3 was particularly vulnerable due to youth. (18 U.S.C. § 3592(c)(11)).

All pursuant to Title 18, United States Code, Sections 3591 and 3592.

**Count Three**

As to Count Three, defendants

**WILSON ARTURO CONSTANZA-GALDOMEZ,**
a.k.a. Humilde,
**a.k.a. Marco Saravia, and,**

**EDIS OMAR VALENZUELA-RODRIGUEZ,**
**a.k.a. Little Felon,**

1.      Were more than 18 years of age at the time of the offenses (18 U.S.C. § 3591(a));

2.      Intentionally killed the victims (18 U.S.C. § 3591(a)(2)(A));

3.      Intentionally inflicted serious bodily injury that resulted in the death of the victims (18 U.S.C. § 3591(a)(2)(B));

4.      Intentionally participated in acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offenses, and the victims died as a result of the acts (18 U.S.C. § 3591(a)(2)(C));

5.      Intentionally and specifically engaged in acts of violence knowing that the acts created a grave risk of death to a person, other than one of the participants to the offenses, such that participation in the acts constituted a reckless disregard for human life and the victims died as a result of the acts (18 U.S.C. § 3591(a)(2)(D));

6.      Committed the offenses in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim. (18 U.S.C. § 3592(c)(6));

7. Committed the offenses after substantial planning and premeditation to cause the death of a person (18 U.S.C. § 3592(c)(9)); and

8. Victim 4 was particularly vulnerable due to youth. (18 U.S.C. § 3592(c)(11)).

All pursuant to Title 18, United States Code, Sections 3591 and 3592.

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.     Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 1963 in the event of the defendants' conviction on Count One of this Indictment.

### RICO Forfeiture

2.     Upon conviction of the offense set forth in Count One of this Indictment, the defendants,

**WILSON ARTURO CONSTANZA-GALDOMEZ,**
**a.k.a. Humilde,**
**a.k.a. Marco Saravia,**

**EDIS OMAR VALENZUELA-RODRIGUEZ,**
**a.k.a. Little Felon,**

**JONATHAN PESQUERA-PUERTO,**
**a.k.a. Truney, and**

pursuant to 18 U.S.C. 1963(a), shall forfeit to the United States:

      a.     any interest acquired or maintained in violation of 18 U.S.C. § 1962;

      b.     any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendants established, operated, controlled, conducted, or participated in the conduct of, in violation of 18 U.S.C. § 1962; and

      c.     any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of 18 U.S.C. § 1962.

**Substitute Assets**

3.    If, as a result of any act or omission of the defendant, any such property subject to

forfeiture:

     a.    cannot be located upon the exercise of due diligence;

     b.    has been transferred or sold to, or deposited with, a third person;

     c.    has been placed beyond the jurisdiction of the Court;

     d.    has been substantially diminished in value; or

     e.    has been commingled with other property which cannot be divided

        without difficulty,

the United States, pursuant to 18 U.S.C. § 1963(m), shall be entitled to forfeiture of substitute

property up to the value of the forfeitable property described above.

18 U.S.C. § 1963

*Kelly O. Hayes / An.*
Kelly O. Hayes
United States Attorney

*David L. Jaffe / au*
David L. Jaffe
Chief
Violent Crime and Racketeering Section

A TRUE BILL

**SIGNATURE REDACTED**
Foreperson

Date: ___5/1/202__